**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 08-2252

OLIN CORPORATION,

Plaintiff - Appellee,

v.

P.H. GLATFELTER COMPANY, a/k/a Glatfelter, d/b/a Glatfelter
Company,

Defendant - Appellant.

Appeal from the United States District Court for the Western
District of North Carolina, at Asheville. Lacy H. Thornburg,
District Judge. (1:06-cv-00367-LHT)

Argued: December 2, 2009               Decided: March 5, 2010

Before TRAXLER, Chief Judge, and SHEDD and DAVIS, Circuit
Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Adam Howard Charnes, KILPATRICK & STOCKTON, LLP,
Winston-Salem, North Carolina, for Appellant. Craig C. Martin,
JENNER & BLOCK, Chicago, Illinois, for Appellee. **ON BRIEF:**
Betsy Cooke, Stephen R. Berlin, KILPATRICK & STOCKTON, LLP,
Raleigh, North Carolina, for Appellant. Philip S. Anderson,
LONG, PARKER, WARREN, ANDERSON & PAYNE, PA, Asheville, North
Carolina; Barry Levenstam, Amanda S. Amert, Melissa L. Dickey,
JENNER & BLOCK, Chicago, Illinois, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This appeal arises from a declaratory judgment/breach of contract action with respect to a contractual indemnity provision. We affirm.

Appellee Olin Corporation ("Olin") purchased the Ecusta Paper Mill in Pisgah Forest, North Carolina in 1949. Over the years thereafter, Olin disposed of waste products containing mercury, which resulted from certain of its manufacturing processes, both on-site and in wastewater that flowed onto nearby property. In 1973, the Environmental Protection Agency pressed regulatory actions intended to require Olin to address and/or reduce its discharge of mercury. In part as a result, Olin ceased the extant manufacturing processes and substituted purchased chemicals.

In 1985, senior officers of Olin's Ecusta Division, including Garza Baldwin (President), Robert Cunningham, Jr. (Chief Legal Officer and Vice President of Human Resources and Public Affairs), and Robert Gussman (Environmental Director), together with several investors, purchased the Ecusta Mill from Olin, forming Ecusta Corporation. Olin acquired an interest in the newly-formed entity but did not involve itself in operations. Baldwin, Cunningham, and Gussman assumed substantially the same leadership positions in Ecusta Corporation as they had held in the Ecusta Division of Olin. In

3

1987, Appellant P.H. Glatfelter Company ("Glatfelter") acquired the Ecusta Corporation through a stock purchase transaction, in which Glatfelter assumed certain of Ecusta Corporation's liabilities. Baldwin remained involved in the business and served on Glatfelter's Board of Directors. Cunningham and Gussman remained involved as well, and served in the same capacities in which they served for Ecusta Division and Ecusta Corporation.

The contractual rights and obligations of Olin and Glatfelter are governed by a July 24, 1985, Purchase Agreement ("the Agreement"). The Agreement provides that Glatfelter (as successor-in-interest to Ecusta Corporation) must indemnify Olin for certain environmental liabilities under prescribed circumstances. As constituent parts of the Agreement, the representations and warranties of Olin's officers, and the so-called Environmental Disclosure Statement ("EDS") underscore Olin's obligations in divulging the existence of mercury at Ecusta Mill to Glatfelter. (The mill property has changed hands several times in the last decade.)

On or about January 23, 2006, the North Carolina Department of Environment and Natural Resources ("NCDENR") notified Olin and Glatfelter (among others) that it planned to take action concerning Ecusta Mill under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601, et

4

seq. ("CERCLA"). The NCDENR notice identified five Recognized Environmental Concerns ("RECs") at Ecusta Mill that would require clean-up. Pursuant to the Agreement, Glatfelter agreed to indemnify Olin with respect to four of the five RECs. It refused to indemnify Olin for the costs related to remediation of mercury contamination released from the Ecusta Mill's Electro-Chemical Building.

Thereafter, Olin sued Glatfelter in the United States District Court for the Western District of North Carolina. After several preliminary matters had been attended to by the court and the completion of discovery, Olin moved for summary judgment.

The district court issued a carefully-reasoned memorandum opinion in which it granted summary judgment to Olin. Olin Corp. v. P.H. Glatfelter Co., No. 1:06CV367, 2008 WL 4596262, (W.D.N.C. Oct. 14, 2008). The court first determined, inter alia, that, as to Olin's request for a declaratory judgment, the EDS specifically and unambiguously "refer[red]" to the "disposition" of mercury. Id. at *6-8. Moreover, "the Agreement with its accompanying EDS obligated [Glatfelter] to indemnify Olin for the costs of cleanup described in RECs 1 and 5." Id. at *8-10. Second, the district court determined that Glatfelter's counterclaims for fraud, negligent

misrepresentation, and unfair and deceptive trade practices were time-barred. Id. at *10-11.

Glatfelter noted its timely appeal to this court. We review the district court's grant of summary judgment de novo. Meson v. GATX Tech. Servs. Corp., 507 F.3d 803, 806 (4th Cir. 2007) (citation omitted). Summary judgment is proper only where "there is no genuine issue as to any material fact" and the moving party is "entitled to judgment as a matter of law." Id. (citation omitted).

By its terms, the Agreement would "be governed by, and construed in accordance with, the laws of the State of New York." (J.A. 688). We discern no error by the district court in its summary judgment order.

First, "[i]t is the primary rule of construction of contracts . . . that when the terms of a written contract are clear and unambiguous, the intent of the parties must be found therein." Mazzola v. County of Suffolk, 533 N.Y.S.2d 297, 297 (N.Y. App. Div. 1988) (internal quotation marks and citation omitted). "The words and phrases used in an agreement must be given their plain meaning so as to define the rights of the parties." Id. (citation omitted). Here, the terms "referred to" and "disposition" have plain and unambiguous meanings, and the disposition of mercury is referred to throughout the EDS.

6

Second, under New York's policy of strict interpretation of indemnification clauses, a court must examine whether Glatfelter's intention to indemnify "can be clearly implied from the language and purpose of the entire agreement and the surrounding facts and circumstances." Hooper Assocs., Ltd. v. AGS Computers, Inc., 74 N.Y.2d 487, 491-92 (1989). That test is satisfied here. For example, Baldwin, Cunningham, and Gussman were aware of issues regarding Ecusta Mill's mercury contamination. Accordingly, their subsequent employers, Ecusta Corporation and then Glatfelter, of which they were high-ranking officers, are charged with such knowledge and thus also were aware that the EDS "referred to" the disposition of mercury. J.A. 2642-43. Accordingly, Glatfelter was on notice of the mercury disposal. Cf. United States v. Hooker Chems. & Plastics Corp., 850 F.Supp. 993, 1059 (W.D.N.Y. 1994) (noting that "[e]ven for latent defects, the seller's duty terminated when a new owner discovered or should reasonably have discovered and had a reasonable opportunity to abate the condition").

Third, under North Carolina law, Glatfelter's tort counterclaims are time-barred because it reasonably should have been aware of the disposition of the mercury years before it decided to bring its claims. See, e.g., Sullivan v. Mebane Packaging Group, Inc., 158 N.C. App. 19, 28 (2003) (noting that we have held that knowledge of information should be imputed to

7

investors who possess documents apprising them of the risks associated with the investments).

In sum, upon our careful consideration of the record, briefs, oral argument by the parties, and applicable law, we affirm on the basis of the opinion of the district court. Olin Corp. v. P.H. Glatfelter Co., No. 1:06CV367, 2008 WL 4596262, (W.D.N.C. Oct. 14, 2008).

AFFIRMED